United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Casa Besilu LLC and Benjamin Leon Jr., Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 20-24766-Civ-Scola |
| Federal Insurance Company and others, Defendants. | ) ) ) | |

**Order on Motion to Dismiss**

This matter is before the Court upon the Defendants' motion to dismiss the Plaintiffs' complaint. For the reasons stated below, the Court **denies** the Defendants' motion. (**ECF No. 29**.)

## 1. Background

The Plaintiffs, Casa Besilu LLC and Benjamin Leon, Jr., bring this action against the Defendants Bahamas First General Insurance Ltd. ("Bahamas First"), Federal Insurance Company ("Federal"), and Chubb & Son Inc. ("Chubb") relating to damage caused to the Plaintiffs' property located at Lot #35, Block #1, Treasure Cay, Abaco, Bahamas (the "Bahamas Property") by Hurricane Dorian.

In support of their claims against the Defendants, the Plaintiffs state that in September 2017, they approached Chubb and Federal in order to obtain insurance for the Bahamas Property. (ECF No. 1, at ¶ 19.) Given the location of the property, Chubb and Federal engaged with Bahamanian insurance agencies to obtain adequate coverage from a Bahamanian insurance company. (*Id.*, at ¶¶ 22-24.) The Plaintiffs state they never communicated directly with the Bahamanian agencies engaged by Chubb and Federal. (*Id.*, at ¶ 25.)

In order to obtain adequate coverage for the Plaintiffs, at Chubb and Federal's request, the Plaintiffs prepared a draft insurance application which they provided to Chubb asking Chubb to obtain "comprehensive liability and property coverage, including a dwelling coverage limit of $2,000,000 and flood coverage." (*Id.*, at ¶ 26.) Notwithstanding the Plaintiffs' request for flood coverage, the Plaintiffs allege that Chubb ultimately procured a policy, effective from October 12, 2017 through October 12, 2018 which had a $2,000,000 dwelling coverage limit, but which lacked flood coverage. (*Id.*, at ¶ 28.) Upon the policy's renewal, Chubb and Federal representative Rick Albers inspected the Bahamas Property to determine if the property was adequately insured. (*Id.*, at ¶ 29.) In July 2018, Albers determined that the property was

underinsured, and recommended increasing the coverage limit to $3,506,688. (*Id.*, at ¶ 30.) Alberts also recommended that the Plaintiffs expand the property's fire alarm system, install electronic gate access, install a water leak detection system, and disclose information to the local fire department. (*Id.*, at ¶ 31.) While the Plaintiffs asked Chubb and Federal if the Bahamas Property required any other coverages and despite the property's "proximity to the ocean, the risk of flood damage in a hurricane-prone area, and the Insureds' prior request for flood coverage," Chubb and Federal did not raise the issue of flood coverage. (*Id.*, at ¶¶ 34-35.) Despite the availability of flood coverage, including through Bahamas First, Chubb and Federal did not have flood coverage added to the Plaintiffs' policy. (*Id.*, at ¶¶ 36-41.)

The policy in place at the time the Bahamas Property was damaged by Hurricane Dorian was issued by Bahamas First under Policy No. 5538-4122, effective from October 12, 2018 through October 12, 2019 (the "Policy"). (*Id.*, at ¶ 42.) Chubb and Federal reinsured the Policy through its affiliates or subsidiaries. (*Id.*, at ¶ 45.) Due to Chubb and Federal's status as reinsurer, the Plaintiffs allege that Chubb and Federal gained a personal and financial interest in the Policy that was adverse to the Plaintiffs' interests, because an indemnity payment to the Plaintiffs would cause a loss to Chubb and Federal. (*Id.* at ¶ 47.) The Plaintiffs also allege that Chubb and Federal's status as reinsurer created a fiduciary duty between these Defendants and Bahamas First, that conflicted with its pre-existing relationship with the Plaintiffs. (*Id.*, at ¶ 48.)

The Plaintiffs state that after the Bahamas Property was damaged by Hurricane Dorian, the Plaintiffs promptly notified the Defendants who opened a claim under Claim No. 040419044014. (*Id.*, at ¶¶ 49-50.) The Defendants engaged Engineering Systems Inc. ("ESI") to provide an engineering opinion as to the cause and origin of the damage to the Bahamas Property. ESI concluded the damage was caused by wind, storm surge, and non-event related damage, which included looting. (*Id.*, at ¶¶ 51-53.) Following receipt of ESI's report, Bahamas First recognized coverage for wind and rainwater damage, denied coverage for flood, storm surge, and mold, and did not address any coverages for damages caused by looting. (*Id.*, at ¶¶ 54-56.) The Defendants' loss estimators calculated the total cost of all repairs would be $2,500,525.32, attributing $998,852.88 to wind and rainwater and $1,501,672.44 to storm surge, which Bahamas First contended was not covered by the Policy. (*Id.*, at ¶¶ 57-58.) The estimate did not address looting. (*Id.*, at ¶ 59.)

Bahamas First offered to pay the Plaintiffs $823,519.88 for the Plaintiffs' losses, after applying the Policy's 5% wind deductible. (*Id.*, at ¶ 60.) The Plaintiffs' state that Bahamas First later increased its offer to $827,228.63, but

state that neither offer covered any losses stemming from looting. (*Id.*, at ¶¶ 60-62.) The Plaintiffs further state that Chubb and Federal, as reinsurers, interfered with Bahamas First's settlement of its claim with the Plaintiffs by causing Bahamas First to calculate wind damage separately from storm surge damage, even though both forms of damage were caused by a hurricane in an unbroken sequence of events, and therefore "should be treated as hurricane damage." (*Id.*, at ¶¶ 66-71.) The Plaintiffs state that in the spring of 2020, Chubb and Federal took over the Plaintiffs' claim and made settlement offers excluding storm surge, on the basis that the Plaintiffs "did not 'request[] flood coverage, nor was flood coverage purchased.'" (*Id.*, at ¶¶ 73-75.) Chubb reaffirmed Bahamas First's $827,228.63 offer, arguing the Plaintiffs failed to obtain flood coverage through Chubb. (*Id.*, at ¶ 80.)

The Plaintiffs allege nine causes of action in their complaint against various of the Defendants. Count I of the complaint, for breach of a written contract, is alleged with respect to Bahamas First. Count II (breach of oral contract); Count III (breach of fiduciary duty); Count IV (tortious interference); and Count V (gross negligence) are alleged against Federal. The Plaintiffs allege the same causes of action against Chubb as they do against Federal in Counts VI through IX of the complaint.

## 2. Legal Standard

### A. Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly,* 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

#### A. Count I, Breach of Written Contract

The Court turns first Count I of the Plaintiffs' complaint. The Defendants contend that Count I of the complaint seeking relief for breach of contract against Bahamas First must be dismissed as "it is not clear how Bahamas First allegedly breached the policy." (ECF No. 29, at 15.) Bahamas First states looting damage was not addressed by Bahamas First in its settlement offer because Plaintiffs never submitted a claim for looting damages and moreover that it appears the Plaintiffs agree the policy excludes flood damage, so Bahamas First did not breach the Policy with the Plaintiffs.

The interpretation of contracts, such as insurance policies, is a question of law for the Court. *Reesey v. Fed. Emergency Mgmt. Agency*, No. 13-60488-Civ, 2013 WL 12086662, at *2 (S.D. Fla. July 9, 2013) (Scola, J.) Ordinary contract principles govern the interpretation of insurance policies. *ABCO Premium Fin. LLC v. Am. Int'l Grp., Inc.*, 11-23020-Civ, 2012 WL 3278628, at *3 (S.D. Fla. Aug. 9, 2012) (Scola, J.). Where a contract is clear and unambiguous and does not involve any absurdities or contradictions, it is the best evidence of the parties' intent. *Id.* (internal quotations omitted). Contracts and insurance policies should be construed in accordance with their plain language. *Id.* Only where there is a genuine inconsistency, uncertainty, or ambiguity may a court interpret a policy against the insurer and in favor of coverage. *Id.* (internal quotations omitted). That an insurance policy requires analysis for comprehension does not mean that it is ambiguous. *Id.* (internal quotations omitted).

The Court disagrees with Bahamas First that the Plaintiffs have failed to adequately allege that the Bahamas First breached its contract with the Plaintiffs. The Plaintiffs' Policy provides for "Deluxe House Coverage" and "Deluxe Contents Coverage" which covers "all risk of physical loss" to the Plaintiffs' house and personal property, respectively. (ECF No. 1-2, at 8, 17.) The Plaintiffs argue that these provisions cover looting damages and Bahamas First does not dispute that these coverages exist, rather, Bahamas First states that they are not implicated because the Plaintiffs never affirmatively made a claim with Bahamas First asking for any looting losses to be covered. Upon review of the Policy, the Court does not see, nor does the Defendant cite, any provision requiring the Plaintiff to specifically enumerate each type of loss it seeks coverage under when reporting a loss. Rather, the Policy simply states, "If you have a loss, please contact us by telephone as soon as possible" and provides various means for the loss to be reported. (ECF No. 1-2, at 42.) There is no requirement that each form of potential loss be enumerated in the insured's report to the insurer.  As the Plaintiff has adequately alleged that the Policy covers looting damages and Bahamas First failed to offer coverage for these damages, the Court finds the Plaintiffs have adequately stated a claim against Defendant Bahamas First for breach of contract.

The Court notes that the Defendants submitted several documents as a composite exhibit with their reply in further support of their motion to dismiss which purport to show that the Plaintiffs did not make a claim for looting damages. (*See* ECF No. 33-1.) These materials are not properly before the Court. At the motion to dismiss stage, the Court assumes the Plaintiffs' allegations to be true. Asking the Court to consider matters outside the pleading which are presented to and not excluded by the Court requires the Court to convert the Defendants' motion to dismiss into one for summary judgment pursuant to Federal Rule 56. *Diaz v. Solmar Restaurant, Inc.*, No. 08-21379-Civ, 2008 WL 5787709, at *2 (S.D. Fla. Dec. 22, 2008) (Seltzer, Mag. J.). Neither party has argued why conversion of the Defendants' motion from a motion to dismiss to a motion for summary judgment is proper (or improper) and therefore the Court declines to do so, and by extension, declines to consider the additional evidence submitted by the parties with their briefing.

### B. Chubb & Son Inc.

The Defendants next argue that Chubb must be dismissed from this matter as the Plaintiffs improperly named Chubb as a Defendant to this action. While it may be true that the Defendant Chubb is not a proper party, at the motion to dismiss stage, the Court is obligated to accept the allegations in the complaint as true. *de Jesus Hernandez v. Four Seasons Hotels Ltd.*, No. 05-

22360-Civ, 2008 WL 8155880, at *1 (S.D. Fla. Dec. 2, 2005) (Altonaga, J.). As here, the Defendant in *Four Seasons* suggested suing the wrong party was "tantamount to a failure to state a cause of action" warranting dismissal of that Defendant pursuant to Federal Rule 12(b)(6). *Id.* For purposes of the present motion, the Court must accept as true the Plaintiffs' allegations that the Plaintiffs requested insurance for the Bahamas Property from Chubb and Federal and that Chubb and Federal utilized Bahamanian agencies to issue the Policy to the Plaintiffs. Moreover, the complaint alleges that notwithstanding the Plaintiffs' request, such policy omitted flood coverage. The Court also must accept as true the Plaintiffs' allegations regarding Chubb's interference in the claims process between Bahamas First and the Plaintiffs. The Court therefore finds the Defendants' request that Chubb be dismissed from this action to be without basis at this stage of the litigation.

Moreover, as stated above, and just as in *Four Seasons*, the Court notes that the Defendants included an affidavit as an exhibit to their motion to dismiss in support of their request that Chubb be dismissed from this action. This is beyond the scope of the Plaintiffs' complaint and states facts which conflict with those alleged by the Plaintiffs. The Court cannot consider these materials at the motion to dismiss stage without converting the Defendants' motion into one for summary judgment. For the same reasons stated above, the Court declines to convert the motion to dismiss into one for summary judgment.

### C. Counts Against Chubb and Federal

The Court now turns to Counts II through IX of the Plaintiffs' complaint, which purport to state claims for breach of oral contract (Counts II, VI); breach of fiduciary duty (Counts III, VII); tortious interference (Counts IV, VIII); and gross negligence (Counts V, IX).

### (1)  Counts VI and VIII, Tortious Interference

The Defendants first argue that the Counts IV and VIII of the complaint must be dismissed because the Plaintiffs lack standing to file a direct action against Chubb and Federal as reinsurers. (ECF No. 29, at 4.) The Defendants argue that the Plaintiffs concede that Chubb and Federal are not parties to the Policy at issue and have no other contractual privity with these Defendants, and therefore have no basis to sue Chubb and Federal. In response, the Plaintiffs state that they are not suing Chubb and Federal under a reinsurance contract, but rather, are suing them for causing Bahamas First to breach the Policy. (ECF No. 32, at 3.) The Plaintiffs clarify that it is Chubb and Federal's

status as reinsurers that gave them a motive to commit this tort, not that their reinsurer status is the basis of their liability.

The Defendants state that Florida precedent and statutory law supports their position. First, the Defendants state that Fla. Stat. 624.610 prevents the Plaintiffs' suit against Chubb and Federal. This statute provides that "[n]o person, other than the ceding insurer, has any rights against the reinsurer which are not specifically set forth *in the contract of reinsurance or in a specific written, signed agreement* between the reinsurer and the person." Fla. Stat. 624.610(9) (emphasis added). However, the Defendants' citation to this statutory language ignores the fact that the Plaintiffs are not asserting claims for tortious interference against Chubb and Federal because these Defendants breached their contract with the Plaintiffs, but rather, because the Plaintiffs allege that Chubb and Federal interfered with the contract in place between the Plaintiffs and Bahamas First. Accordingly, the Court finds this statute to be inapposite to the Plaintiffs' tortious interference claims as it requires there to be the existence of a contract between the parties.

The Defendants' citation to *Banco Ficohsa v. Aseguradora Hondurena, S.A.* is similarly misplaced. 937 So. 2d 161 (Fla. 3d DCA 2006). *Banco Ficohsa*, like Fla. Stat. 624.610, stands for the proposition that a person not in "privy with a contract does the have the right to [sue] for its breach," and an ordinary reinsurance agreement, absent provisions to the contrary "operates solely as between the reinsurer and the reinsured." *Id.* at 164-65. If the Plaintiffs were alleging claims for tortious interference against Chubb and Federal because Bahamas First breached its contract with the Plaintiffs, the Court would agree that the Plaintiffs would not have standing to sue its reinsurers. However, that is not what the Plaintiffs are seeking to do. The Plaintiffs are suing the Defendants Chubb and Federal for their tortious interference with the contract in place between Bahamas First and the Plaintiffs, as stated above.

The Court finds instructive the authority cited by the Plaintiffs, *Law Offices of David J. Stern, P.A. v. SCOR Reinsurance Corp.*, 354 F. Supp. 2d 1338 (S.D. Fla. 2005) (Moore, J.). In *SCOR*, the plaintiff sued the defendant, SCOR Re for tortious interference with their ability to receive the benefits from its insurer. *Id.* at 1340. In their complaint, the plaintiff stated SCOR Re "induced [the insurer] into breaching [the policy] in order to protect [its] own pecuniary interests" which the plaintiff alleged was an unjustified interference of its contract with its insurer, ultimately causing harm to the plaintiff. *Id.* at 1341-42. As here, the defendant reinsurer in *SCOR* argued that the plaintiff had no legal interest in the reinsurance agreement between insurer and reinsurer, and therefore was without any basis to sue the reinsurer. *Id.* at 1342. The Court disagreed because the plaintiff's tortious interference claim was for the

reinsurer's "interference with [the insurer's] contractual obligations to [p]laintiffs." *Id.* at 1346.

The Defendants claim that reliance on *SCOR* is misplaced because the reinsurer was found to be an undisclosed principle and because few courts have relied on this published opinion. First, the Defendants fail to explain why SCOR Re's status as an undisclosed principle is material and should defeat the Plaintiffs' tortious interference claims, and second, the Court is unpersuaded by the Defendants' suggestion that the Court should ignore a published opinion of this Court simply because it has not been widely cited in other opinions. Accordingly, the Court finds that dismissal of the Plaintiffs' claims for tortious interference against Chubb and Federal is unwarranted.

### (2) Counts II, III, V, VI, VII, and IX

The Defendants Federal and Chubb argue that Counts II, III, V, VI, VII and IX of the Plaintiffs' complaint must be dismissed as they are not yet ripe and because they fail to state valid claims. The Court addressees each of these arguments in turn.

### 1. Ripeness

Chubb and Federal argue the Plaintiffs' claims must be dismissed as they are "not ripe because Plaintiffs have yet to litigate and *lose* their breach of contract claim against Bahamas First." (ECF No. 29, at 7 (emphasis in original).) In response, the Plaintiffs argue that the Defendants' argument is misplaced because their claims do not depend on the outcome of the coverage litigation between Plaintiffs and Bahamas First as they have suffered damages whether or not the storm surge damage is ultimately covered by their insurer. (ECF No. 32, at 4.)

Both parties rely on *Blumberg v. USAA Casualty Insurance Co.* in their motions, though reach different conclusions from this precedent. 790 So. 2d 1061 (Fla. 2001). In *Blumberg*, the Florida Supreme Court explained that a negligence or malpractice cause of action "accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings or, if there are no related underlying judicial proceedings, when the client's right to sue . . . has expired." *Id.* at 1065. It is the moving party's burden to demonstrate that the "underlying judicial proceeding will determine whether damages were incurred which are causally related to the alleged negligence/malpractice." *Id.* Where a plaintiff prematurely files such causes of action, the defendant may move for "an abatement or stay of the claim on the ground that the . . . action has not yet accrued." *Id.*

In determining whether the Plaintiffs have stated ripe causes of action against Chubb and Federal, the Court must ask whether the Plaintiffs will have suffered any damages regardless of whether or not they are successful in their coverage claims against Bahamas First. *See Halmos v. Ins. Co. of N. Am.*, No. 08-10084-Civ, 2010 WL 11447326, at *2 (S.D. Fla. 2010) (Gold, Mag. J.). The Plaintiffs state that they have suffered damages regardless of whether or not Bahamas First covers the storm surge damage because they have suffered "loss of use and attorney's fees and costs." (ECF No. 32, at 5.) The Court agrees that the Plaintiffs' claims are ripe. If the Plaintiff succeeds in its coverage litigation, then the Plaintiff will still have suffered "consequential damages, associated with the need to pursue litigation . . . to achieve a favorable result" because the policy did not include the requested coverages Plaintiffs requested from Chubb and Federal. *Goetz v. Metropolitan Life Ins. Co.*, No. 05-61323-Civ, 2005 WL 8154691, *6 (S.D. Fla. Nov. 25, 2005) (Gold, Mag. J.). Put another way, had Chubb and Federal obtained insurance for the Plaintiffs that included coverage for flood damage such that the Plaintiffs "would have more easily . . . obtain[ed] benefits" then the Plaintiffs will have stated a potential claim against Chubb and Federal that otherwise does not exist against Bahamas First. *Id.* Moreover, "failure to obtain desired coverage from an insurance carrier is a separate and independent cause of action in negligence from the claim against the insurer." *Id.* If, however, the Plaintiffs lose their coverage litigation against Bahamas First, then the Plaintiffs' case is all the more obvious. *Id.* In either scenario, the Defendants' arguments that the Plaintiffs claims are not yet ripe fail.

### 2. Failure to State a Claim Against Chubb and Federal as Insurance Brokers

Chubb and Federal next argue that the Plaintiff fails to state a claim against Chubb and Federal because the Defendants argue such allegations are "totally contradicted by the face of the Bahamas First policy." (ECF No. 29, at 9.) Specifically, the Defendants state that the "Premium Bill" page of the policy identifies "Nielson, Hoover & Company, Inc." as the Plaintiffs' insurance producer. (*See* ECF No. 1-2, at 2.) The Defendants also state that the Plaintiffs "actually admit Nielson Hoover is their 'U.S. brokerage.'" (ECF No. 1, at 3 n.2 ("The Insureds could not obtain coverage through their U.S. brokerage, Collinsworth, Alter, Fowler & French, LLC[1] because Collinsworth was not

---

[1] The Defendants state in their briefing that Collinsworth, Alter, Fowler & French, LLC is the current name of Nielson, Hoover & Company, which the Court assumes to be true for the purposes of this motion as it is not material to the Court's analysis.

licensed to operate in the Bahamas.").) In response, the Plaintiffs state this is of no event as the Plaintiffs had a non-exclusive relationship with Nielson, Hoover & Company and approached Chubb and Federal to obtain insurance for the Bahamas Property because Nielson, Hoover & Company was not licensed to operate in the Bahamas.

Once again, to defeat this argument, the Plaintiffs point the Court to affidavits submitted in connection with the parties' motion to dismiss briefing, which the Court may not consider without converting this motion into one for summary judgment. (ECF No. 33, at 7 ("Even the Declaration of Mr. Shealy provides the Plaintiffs primarily dealt with the producer (Nielson Hoover) to obtain the insurance contract at issue.")  For the same reasons the Court articulated above, the Court does not consider this newly submitted evidence as it is not properly before the Court at this stage of the litigation.

The Plaintiffs' complaint states that Nielson, Hoover & Company was not licensed to operate in the Bahamas so the Plaintiffs "turned to Chubb [and Federal]" because the Defendants held themselves out as "capable of advising on and procuring appropriate coverage in the Bahamas."  (ECF No. 1, at 3.) The Plaintiffs stated that Chubb and Federal had "control over procuring coverage for the [Bahamas Property]" and further state that "[n]o other brokerage or agency under the Insureds' control participated in a meaningful way or received payment in connection with the policy Chubb [and Federal] ultimately procured." (*Id.*, at 4.) Moreover, the complaint states that the Plaintiffs furnished certain information relating to the coverage sought upon request by Chubb and Federal and worked only through these Defendants to obtain the insurance for the Bahamas Property. (*Id.*, at 4-5.) As plead, the Court finds that the Plaintiffs state viable claims against Chubb and Federal as their insurance brokers and therefore disagrees with the Defendants claim that the Plaintiffs' arguments are "baseless." (ECF No. 33, at 7.)[2]

### D. Indispensable Party

The Defendants next argue that the Plaintiffs' complaint should be dismissed because the Plaintiffs failed to join Nielson, Hoover & Company to the lawsuit, despite Nielson, Hoover & Company being listed on as the

---

[2] In their initial motion, the Defendants also argued Counts II, III, V, VI, VII, and IX had to be dismissed because they failed to state claims against Chubb and Federal as third-party claims administrators or independent adjusters. (ECF No. 29, at 10.) In their opposition to the Defendants' motion, the Plaintiffs state that they are only suing these Defendants as their insurance broker, and therefore, the Court does not reach these arguments as they are not being advanced by the Plaintiffs.

producer on the "Premium Bill" page of the Policy. The Court disagrees that Nielson, Hoover & Company is indispensable to this action.

The Plaintiffs' complaint is fairly straightforward. The Plaintiffs allege that they needed insurance for the Bahamas Property, but could not use their typical U.S. brokerage, Nielson, Hoover & Company because they were not licensed to operate in the Bahamas. Accordingly, the Plaintiffs turned to Chubb and Federal, who held themselves out as capable in obtaining insurance in the Bahamas. The Plaintiffs provided certain information to these Defendants, including an alleged desire for any policy covering the Bahamas Property to include flood coverage. With this information in hand, Chubb and Federal ultimately placed coverage with Bahamas First, though the Policy allegedly did not include flood coverage. Thereafter, the Bahamas Property was damaged by Hurricane Dorian, leading to the instant dispute between the parties.

As plead, the Court fails to see how Nielson, Hoover & Company is an indispensable party to this action. Dismissal of an action under Federal Rule 12(b)(7) for failure to join a party under Rule 19 is a two-step inquiry. *Senalle v. Geovera Specialty Ins. Co.*, No. 20-23211-Civ, 2020 WL 5574188, at *1 (S.D. Fla. Sept. 17, 2020) (Scola, J.). First, the Court must decide if the absent party is required under Federal Rule 19(a) and determine if joinder is feasible and second, must consider where joinder is not feasible if in equity and good conscience the action should proceed among the existing parties, or be dismissed. *Id.*, at *1-2. The Plaintiffs' allegations are that Chubb and Federal, with no other brokerage or agency participating in a meaningful way, failed to procure a policy that was consistent with the Plaintiffs' instructions. With these allegations in mind and based on the Plaintiffs' pleading, the Court fails to see how Nielson, Hoover & Company is necessary to this litigation, let alone indispensable.

### E. Heightened Pleading Standard Under Federal Rule 9

The Defendants next argue that the Plaintiffs' claims for negligent misrepresentation fail to satisfy the heightened pleading standard required by Federal Rule 9(b) and therefore the Plaintiffs must state allegations of misrepresentation more clearly or alternatively the Defendants ask the Court to strike paragraphs 103(ii), 108(ii), 116(ii), 128(iii), 133(ii), and 141(ii) from the Plaintiffs' complaint.

In a vacuum, the Defendants correctly state that the Court has held that *claims* for negligent misrepresentation sound in fraud and are therefore subject to the heightened pleading standard of Federal Rule 9(b). *Dixon v. Allergan USA, Inc.*, No. 14-61091-Civ, 2015 WL 12915671, at *3 (S.D. Fla. May 28, 2015) (Scola, J.). However, the Plaintiffs' complaint does not advance any claims for

negligent misrepresentation. Rather, the Plaintiffs advance claims of gross negligence based on Chubb and Federal "misrepresenting that the Insureds neither requested nor purchased flood coverage." (*See* ECF No. 1, at ¶¶ 103(ii); 108(ii); 116(ii); 128(ii); 133(ii); and 141(ii).) These causes of action are distinct from each other and require plaintiffs to plead different elements to state a viable claim. *Deutsche Bank Nat. Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1116-17 (M.D. Fla. 2013) (comparing elements). Nevertheless, if the Plaintiffs' gross negligence claims were predicated on allegations of fraud, they would be subject to the heightened pleading standards of Federal Rule 9(b). *Rana Fin., LLC v. City Nat'l Bank of New Jersey*, 347 F. Supp. 3d 1147, 1155 (S.D. Fla. 2018) (Cohn, J.).

Upon review of the complaint, the Court does not find that the Plaintiffs' claims for gross negligence are predicated on allegations of fraud. Rather, it appears the complaint reveals a simple factual disagreement between the parties. The Plaintiffs state that they requested any coverage for the Bahamas Property include flood coverage and the complaint states that the Defendants have stated the Plaintiffs never made such a request or purchased such coverage. This does not sound in fraud and does not require the Plaintiffs to satisfy the heightened pleading standards of Federal Rule 9(b). Accordingly, the Court finds the Plaintiffs' pleadings sufficient and declines the Defendants' request to dismiss or strike certain paragraphs of the Plaintiffs' complaint.

### F. Forum Non Conveniens

The Defendants next argue that this matter should be dismissed pursuant to the doctrine of *forum non conveniens.* The purpose of the common-law doctrine of *forum non conveniens* is to ensure that a case can be litigated conveniently in the setting in which it was filed. *See La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). By virtue of the doctrine, a district court may decline to exercise jurisdiction over a case when an adequate, alternative forum is available. *Id.*

In undertaking a *forum non conveniens* analysis, the Court must first consider whether the proposed alternative forum is available and adequate. *See Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir. 2001). "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Id.* An alternative forum is adequate so long as it "offers at least some relief." *Id.*

If the court finds that the alternative forum is both available and adequate, the court must then evaluate both the public and private interests involved in retaining the case. *Leon*, 251 F.3d at 1311. Private interests include "the relative ease of access to sources of proof; availability of compulsory

process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). Public interests include the administrative burden imposed upon the court, the imposition of jury duty on the citizens of a community, and the "local interest in having localized controversies decided at home." *Gulf Oil Corp.*, 330 U.S. at 509.

"[T]he plaintiffs' choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendant." *Id.* at 508 (internal quotation marks omitted). A court must "require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before" denying a United States citizen or resident access to the courts of this country. *La Seguridad*, 707 F.2d at 1308 n. 7. "[A] foreign plaintiff's choice deserves less deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

### (1) Alternative Forum

The Court notes at the outset that the Plaintiffs and Defendants are in agreement that the Bahamas "generally constitutes an adequate alternative forum." (ECF No. 32, at 13 n.4.) The Court agrees with the parties' position. *Lambert v. Melia Hotels Int'l S.A.*, 20-21343-Civ, 2021 WL 972684, at *2-3 (S.D. Fla. March 15, 2021) (finding the Bahamas to be an adequate alternative forum).

### (2) Private Interests

Private factors that must be considered in the *forum non conveniens* analysis include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *SME Racks, Inc.*, 382 F.3d at 1100 (quoting *Gulf Oil Corp.*, 330 U.S. at 508-09 (1947)). Additionally, domestic plaintiffs (*i.e.*, United States citizens, residents, or corporations) are afforded "'a strong presumption' that their forum choice is sufficiently convenient." *Leon*, 251 F.3d at 1311 (quoting *Piper*, 454 U.S. at 256). In deciding a motion to dismiss for forum non conveniens, "it is axiomatic that 'the burden of making a showing sufficient to justify the district court's refusal to retain jurisdiction rests on the

moving party.'" *La Seguridad*, 707 F.2d at 1309 (11th Cir. 1983) (quoting *Philippine Packing Corp. v. Maritime Co.*, 519 F.2d 811, 812 (9th Cir. 1975)).

While the Defendants claim that Benjamin Leon, Jr. is a dual citizen of Florida and the Bahamas (and refers to him as a doctor, which apparently he is not), the complaint and the Plaintiffs' briefing states that Mr. Leon is not a Bahamanian citizen. (*See* ECF No. 29, at 19; ECF No. 32, at 14.) The Defendants do not contest that Casa Besilu, LLC is a Florida limited liability company. Therefore, the Court finds that there is a strong presumption that the Plaintiff's chosen forum is sufficiently convenient.

The Defendants concede that because documents are kept electronically this consideration does not weigh in the Defendants' favor. While the Defendants state that certain key witnesses are in the Bahamas and state the Court lacks compulsory process over them, the Defendants have failed to satisfy their burden that this factor weighs in their favor. *See, e.g., Secs. and Exch. Comm. V. Church-Koegel*, No. 20-21001-Civ, 2020 WL 553579, at *2 (S.D. Fla. Sept. 15, 2020) (Scola, J.) (noting defendants satisfied burden by identifying witnesses by name, location, and detailing their expected testimony); *Piper Aircraft Co.*, 454 U.S. at 258-59 (discussing consideration of affidavits describing evidentiary problems as part of a *forum non conveniens* analysis). Even assuming the Plaintiffs did identify witnesses by name, location, and their expected testimony, the Plaintiffs fail to discuss the impact that litigation in the Bahamas would have on the Plaintiffs' ability to call witnesses from Chubb and Federal, who from the Plaintiffs' complaint, appear to be based in America.

Simply put, the Court finds that the Defendants' arguments on the private factors to be conclusory and find that they fail to satisfy the Defendants' burden relating to the Court's *forum non conveniens* analysis. Accordingly, the Defendants have not convinced the Court that the obstacles they allege that would result from litigating this case in Miami carry much weight.

### (3)  Public Interests

While "the private factors are 'generally considered more important' than the public factors," the Eleventh Circuit nonetheless advises district courts, generally, "to consider both factors in all cases," even, apparently, when the private-interests balance is not particularly close. *Leon*, 251 F.3d at 1311.

The public interest factors that should be considered in a forum-non-conveniens analysis include: "court congestion and jury duty generated by controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties attendant [to] resolving conflict-of-laws problems and applying foreign law." *La Seguridad*, 707 F.2d at 1307. Conversely, "[t]here is a strong federal interest in making sure that

plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *Esfeld v. Costa Crociere, S.P.A.,* 289 F.3d 1300, 1311 (11th Cir. 2002).

While the Court appreciates the Defendants' concern for the volume of cases litigated in the Southern District of Florida, the Court does not find that to be a sufficient reason to order that this case be litigated in the Bahamas, particularly in light of the strong interest federal courts have in ensuring American plaintiffs be allowed to litigate their cases in American courts. Certainly, the Bahamas may have an interest in overseeing a litigation involving a Bahamanian insurance company, but the United States also has an interest in overseeing litigations involving American individuals and companies. Here, four of the parties are American and only one is Bahamanian. Accordingly, the Court finds that the public interest factors also weigh in favor of litigating this matter in Miami.

For the reasons stated above, the Court disagrees with the Defendants that dismissal of this matter on the basis of *forum non conveniens* is appropriate.

### G. More Definite Statement Pursuant to Federal Rule 12(e)

The Defendants' final argument is that they require a more definite statement pursuant to Federal Rule 12(e) because the Plaintiffs' complaint is "nearly unintelligible." (ECF No. 29, at 22.) As stated, above, the Court finds that the Plaintiffs' allegations are straightforward and disagree that the complaint is "nearly unintelligible." The Court therefore denies the Defendants' request for a more definite statement.

### 4. Conclusion

For the reasons stated above, the Court **denies** the Defendants' motion to dismiss.

**Done and ordered**, in Miami, Florida, on April 23, 2021.

_____
Robert N. Scola, Jr.
United States District Judge